IN THE UNITED STATES DISTRICT COURT
FOR THE _SOUTHERN_ DISTRICT OF _FLORIDA_
_____ DIVISION
(Write the District and Division, if any, of the
court in which the complaint is filed.)

FILED BY _PG_ D.C.

**FEB 0 1 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

_____
_____
_PROPHET PAULCIN O C# W11537_
(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)

-against-

_WEXFORD HEALTH SERVICES, INC.,_
_et al.,_
_____
(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names. Do not include
addresses here.)

_Amended -_
**Complaint for Violation of Civil
Rights**
(Prisoner Complaint)

Case No. _18-14319-CV-MARTINEZ_
(to be filled in by the Clerk's Office)

Jury Trial: ☑ Yes ☐ No
(check one)

LEGAL MAIL
Provided to
Wakulla CI

**JAN 28 2019**

FOR MAILING

---

## NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public
access to electronic court files. Under this rule, papers filed with the court should *not* contain: an
individual's full social security number or full birth date; the full name of a person known to be a minor; or
a complete financial account number. A filing may include *only*: the last four digits of a social security
number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account
number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or
any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to
proceed in *forma pauperis*.

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach
additional pages if needed.

Name            _PROPHET PAULCIN_

All other names by which you have been known:

_____

_____

ID Number            _W11537_

Current Institution    _WAKULLA C.I. - Annex_

Address            _110 Melaleuca DRIVE_

_Crawfordville, FL 32327_

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether
the defendant is an individual, a government agency, an organization, or a
corporation.  Make sure that the defendant(s) listed below are identical to those
contained in the above caption.  For an individual defendant, include the person's job
or title (if known) and check whether you are bringing this complaint against them in
their individual capacity or official capacity, or both.  Attach additional pages if
needed.

Defendant No. 1

Name                _WexFord Health Sources, INC_

Job or Title
(if known)            _____

Shield Number        _____

Employer            _PRIVATE CORPORATION_

Address            _2601 BlAIRSTONE Rd,_

_Tallahassee, FL 32399_

☑ Individual capacity            ☐ Official capacity

Defendant No. 2

Name                _____

2

The Parties To this Complaint

Defendant No 5. Lee

Job or Title: Regional Medical Director

Shield No:

Employer: Julie Jones

Address: 2601 Blair Stone Rd. Tallahassee, Fl 32399

Defendant No: 6. Jane Doe

Job or Title: Warden

Shield No:

Employer: Julie Jones

Address: Martin C.I. 1150 S.W. Allapattah Rd. Indiantown, FL 34956

Defendant No 7: D. Snider

Job or Title: Assistant Warden

Shield No:

Employer: Julie Jones

Address: Martin C.I. 1150 S.W. Allapattah Rd. Indiantown, FL 34956

Defendant No 8: J. Holtz

Job or Title: Assistant Warden

Shield No:

Employer: Julie Jones

Address: Martin C.I. 1150 S.W. Allapattah Rd. Indiantown, FL 34956

Defendant No: M. McClure

Job or Title: MD. PHD Psychiatrist

Shield No:

Employer Wexford Health Sources, INC

Address: Charlotte C.I. 33123 Oil Well Rd. Punta Gorda, FL 33955

Defendant No 10: A Caddle Logan

3A.

Job or Title: psychologist

Shield No

Employer: Wexford Health Sources, INC

Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, FL 34956

Defendant No: 11: T. RAWSON

Job or Title: psychiatrist

Shield No:

Employer Wexford Health Sources, INC

Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, FL 34956

Defendant No: 12: T. Patten

Job or Title: ARNP

Shield No:

Employer: Wexford Health Sources, INC.

Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956

Defendant No 13: H. Wetterer

Job or Title M.D. CHO

Shield No:

Employer: Wexford Health Sources, INC

Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, FL 34956

Defendant No: 14: R.M. Horyn

Job or Title RN

Shield No:

Employer: Wexford Health Sources, INC.

Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956

Employer: Wexford Health Sources, INC.

Defendant No: 16 MS. Silkilia

3B.

Job or Title: senior psychologist

Shield No:

Employer: WexFord Health sources, Inc.

Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown Fl, 34956

Julie Jones, Employer

Address MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956

Defendant No: 17: R. Bryner

Job or Title WARDEN

Shield No:

Employer: Julie Jones

Defendant: Centurion/MHM

Job or Title: Private Medien corporation

Shield No:

Employer: Julie Jones

Address: 2601 Blair Stone Rd. Tallahassee, Fl 32399

Each Defendant is being sued in their individual And official capacity.

Job or Title *SECRETARY OF FDOC*
(if known)

Shield Number

Employer *GOVERNOR RICK SCOtt*

Address *2601 BlAIR STONE Rd.*
*TALLAHASSEE*

☑ Individual capacity     ☑ Official capacity

Defendant No. 3

Name *TOM REIMERS*

Job or Title *HEALth SERVICE DIRECTOR*
(if known)

Shield Number

Employer *JULIE JONES*

Address *2601 BlAIR STONE Rd.*
*TALLAHASSEE, FL 32 399*

☑ Individual capacity     ☑ Official capacity

Defendant No. 4

Name *JOHN DOE*

Job or Title *ASsisTANt Secretary FOR health Services*
(if known)

Shield Number

Employer *JULIE JONES*

Address *2601 BlAIR StonE Rd.*
*TALLahASSee, FL 32399*

☑ Individual capacity     ☑ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

3

A.  Are you bringing suit against *(check all that apply)*:

☐  Federal officials (a *Bivens* claim)

☒  State or local officials (a § 1983 claim)

B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

8th Amend. To the U.S. Const. And American With Disability Act
42 U.S.C. § 12101-12213 section 504 OF Rehabilitation Act
OF 1973, 29 U.S.C § 794

C.  Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Plaintiff realleges the common Allegations as if fully set forth herein.
Defendants Wexford Health Source Inc, Are liable to plaintiff for
collusion, fraud, And deceit. To deprive, impede, And or discontinue

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

## BASIS FOR JURISDICTION

the psychotropic drugs of Plaintiff with a flagrant disregard of the consequences posed to plaintiff's health. Defendant had a policy, custom and practice of encouraging their employees to discontinue the distribution of a patients psych.meds.or failing to properly train its employees in the consequences of sudden cessation of a patients psych.meds. Defendant further implemented an unconstitutional policy, practice, and custom of substituting wound care for sutures to suicidal patients as a less expensive course of treatment. Defendants policy, practice, and custom was developed and implemented with deliberate indifference to the medical and mental health needs of plaintiff. Defendant are also liable to plaintiff for implementing, or turning a blind eye to the unconstitutional practice of uncertified and untrained staff or employees to supervise suicidal patients. when such employees could not properly and prompt identify the mental deterioration of a suicidal patient and could lacked the training to prevent, discourage, or properly treat a mentally ill patient from attempting suicide. Defendant knew that their policy, practice, and custom posed a significant substantial risk of serious harm to plaintiffs future health and safety. In violation of the ban against cruel and unusual punishment under the Eight Amendment to the U.S. constitution;

101.) Violation of the eight Amendment right to the u.s. constitution.

102.) Plaintiff realleges the common allegations as if fully set forth herein. Defendants Reimers, Jones, Snider, Hoitz, Mr Lee, Jane Doe, warden John Doe, Ass't sec.t of health and human serv. and John Doe, major is charged with providing care and custodial medical services to prisoners at Martin C.I. and directs all medical providers involved in plaintiff's care

(4A)

And or charged with providing plaintiff with the basic necessities
of life. Including personal safety. Defendants were responsible for
ensuring that all mental health programs, and services were properly
implemented at all institutions including MARTIN C.I. Defendants
are charged with Abdicating their duty to supervise and monitor
the treatment of the mentally Ill and deliberately permitting a
pattern of Abuse And constitutional deprivations of the mentally Ill to thrive,
develope, and persist. In violation of the ban against cruel And unusual
punishment.

103.) Violation of the Eight Amendment Right to the U.S. constitution.

104.) Plaintiff realleges the common allegations as if fully set forth herein.
Defendants Horyn, Guidotti, Logan, Rawson, Patten, Wetterer, Sikilia, and Mcclure
Are liable to plaintiff for Routinely denying him constitutionally adequate
mental health and medical treatment. Defendants were aware of plaintiffs
history of suicidal ideations and attempts. Defendants knew that sudden
cessation of plaintiffs psychotropic medication would cause plaintiff to suffer
psychological distress. Suicidal Ideations and Attempts. Defendants deliberately
failed and ignored plaintiff's mental health needs And medical needs. Defendants
omissions And actions caused plaintiff to Attempt suicide on
numerous occassion. Defendants actions inflicted intense psychological and
emotional anguish on plaintiff. Defendants Are liable to plaintiff, And
were directly Responsible for implementing And enforcing An unconstitutional
policy, custom, And practice of Discontinuing prisoners, such as plaintiff
psych.meds. Of Denying, or delaying mentally Ill prisoners their needed
psych. meds. And of failing to render Appropriate And Adequate medical
care to suicidal patients who multi mutilated themselves with A
flagrant disregard of the substantial risk of serious harm said

(4B.)

Actions and omissions would have on such patients, as plaintiff. In violation of the BAN Against cruel And unusual punishment.

105.) Violation of The Eight Amendment Right to the U.S. Constitution.

106.) Plaintiff is entitled to relief Against wexford, centurion/MHM, for Systemic failure to treat known serious medical And mental conditions in violation of 42 U.S.C § 1983 As further set out in the common Allegations Above, And As follows:

a.) Wexford And MHM which was responsible for plaintiff's medical And mental health care has A nation wide corporate policy to provide to prisoners with As little care As possible As late As possible in order to maximize profits.

b.) Because wexford And MHM has been criticized by state health care Audit reports, public organizations, the media, And numerous prisoner complaints.

c.) Because wexford And MHM encouraged its employees to minimize health care cost even when it put prisoners At risk, medical staff felt free to deny care.

d.) Plaintiff has routinely been denied mental health care And medical care for self mutilated wounds.

e.) Wexford And MHM staff were Aware that its employees, such As wetterer And patten were Applying wound care instead of sutures for lascerations requiring sutures As Adequate medical treatment.

f.) The danger of Applying wound care to lascerations requiring sutures to self mutilating patients made contamination easy. And made said self-inflicted injury More Accessible to further dAmAge by mentally unstable patients.

(4c)

G.) As a result of routine failure to apply sutures instead of wound care to suicidal patients, who mutilated themselves. And do follow up wound care, plaintiff suffered severe swelling, cold sweats, high blood pressure, kidney pain, painful urination, and sleep loss.

H.) Wexford and MHM failure to treat plaintiff's mental illness have resulted in self mutilation, suicide attempts, permanent processing and eye dysfunction.

I.) Wexford's and MHM failure to respond to and address plaintiff's medical and self-harm crises has resulted in pneumonia and permanent lung injuries.

J.) Wexford and MHM had a practice of short-staffing medical staff so plaintiff would sometimes wait hours, then be sent away without receiving care.

K.) Wexford and MHM had a practice of under-paying medical doctors but permitting them to work short hours so that they were rarely available to prisoners.

106.) Plaintiff is entitled to relief against Defendant Jones for violating Title II (public entities) of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., (hereinafter "ADA") which provides in pertinent part:

No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity. 42 U.S.C. §12132

107.) Title II of the act prohibits, among other things:
limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit or service of an agency

(40.)

and

subjecting A qualified individual to discrimination under Any program or Activity Conducted by AN agency.

28 C.F.R. § 39.130.

108.) Plaintiff WAS disabled as defined at 42 U.S.C § 12102(2), as he suffered an impairment that substantially limited one or more of his major life Activities, including, but not limited to, mental health disability.

109.) Plaintiff WAS a "qualified individual" As defined at 42 U.S.C. § 12131 (2) "qualified individual" means A person with A disability who meets the essential eligibility requirements for receipt of services or participation in programs or Activities provided by the entity (with or without regard to Any Auxiliary aids or modifications).

110.) FDoc is A public entity that has violated Title II of the ADA.

111.) FDoc is AN entity that receives federal funding.

112.) The operations of FDoc facilities comprise programs and services for purposes of Title II of the ADA

113.) Defendant JONES Authorized her Agents And employees to Act for her when they committed the ADA Violations Alleged herein. Defendant Jone's agents And employees accepted the undertaking of acting on her behalf when they committed they the ADA Violations Alleged herein. Defendant Jones hAd control over her Agents And employees when they committed the ADA Violations Alleged herein

114.) The ADA Violations alleged herein and committed by Defendant Jones agents And employees were done while acting within the course and scope of their employment or agency with Defendant JONES. Thus, Defendant Jones is Vicariously liable for the Actions of its Agents And employees when they

(4E.)

committed the ADA violations alleged herein.

115.) FDOC, its agents and employees, acted intentionally and/or with deliberate indifference to plaintiff's need for a reasonable accommodation by:

a.) Failure to accommodate his mental health disability;

b.) Failing and intentionally refusing to establish policy and procedures whereby prisoners with mental health disability are given protection from other prisoners and correction staff who may see them as targets;

c.) failing and intentionally refusing to train Defendant Jones employees regarding the safe management of mentally ill prisoners;

1. As a proximate result of defendant Jone's, its employees, and agents' failure and intentional refusal to provide plaintiff with a reasonable accommodation for his disability, he suffered physical harm.

(4F.)

## STATEMENT OF CLAIMS B, C, & D.

1.) On Jan. 29, 2017 while incarcerated at Charlotte C.I. plaintiff was attacked by several gang-members and stabbed approx. five times with a home made knife in the head.

2.) On Jan. 30, 2017 plaintiff was placed in Protective management pending investigation and transfer.

3.) Plaintiff has a clinical diagnosis of depression, Bi-polar disorder, and schizophrenia.

4.) Plaintiff learned while in confinement that his psychotropic medication had been inadvertently discontinued (D.C.)

5.) Plaintiff submitted an inmate request to psychiatrist Dr. M. McClure. Whom did examined plaintiff. Determined plaintiff needed further mental health treatment, proscription of additional medication, and did renew plaintiff's former meds.

6.) Defendant McClure was aware of plaintiff's history of suicidal attempts and mental illness. When plaintiff is not on his medication.

7.) On Feb. 14, 2017. Plaintiff was transferred from C.C.I.

8.) On Feb. 15, 2017 Plaintiff arrived at Martin C.I. (M.C.I.)

9.) F.D.O.C policy and procedure requires that when a prisoner transfer from one prison to another all of his medication(s) are to be transported with him.

10.) Upon plaintiff's arrival at M.C.I. senior psychologist ms. Sicilia delivered the orientation speech concerning mental health and how to access the same. Defendant informed plaintiff that whatever meds. he was receiving at his previous institution should have followed him and for plaintiff to show up at the med. pill window everyday to receive his meds.

11.) For the remaining month of Feb. plaintiff appeared at the med. window

(5A.)

everyday to receive his med. But, everyday Plaintiff was informed by the duty nurse that his psychotropic meds, had not yet arrived.

12.) Plaintiff was assigned psychologist A. Caddle Logan as his mental health counsel. And T. Rawson as his psychiatrist.

13.) Plaintiff was interviewed by defendant Logan and did convey to her on each occassion the dire need of his psych. meds, and the trama and violence he was recently exposed to. And conveyed his suicidal ideations to defendant.

14.) Plaintiff attempted several times to see DR. Rawson but eighter defendant was unavaiable and/or due to M.C.I. disorganization and lack of structure, Plaintiff was unfortunately unable to be seen.

15.) From March to April 2017. Plaintiff would periodically appear at the pill window for his meds. But, each time was informed by the duty nurse that his meds, had not yet arrived.

16.) Plaintiff did stop the Warden and and major on at least two separate occassions. And presented his grievance concerning his meds, to both. Plaintiff was informed by both defendants to write an inmate request and grievance to mental health. And if unsuccessful to declare a psychological emergency.

17.) Plaintiff declared exercised all remedies and was unsuccessful.

18.) Plaintiff's psych. emergency was honored only once. At which time he informed Defendant Logan that he was experiencing a moderate impairment of inadaptive functioning due to his serious mental illness. And that said symptoms had been exasperated by the extreme violence Plaintiff was subjected to at C.C.I. and M.C.I.

19.) Plaintiff conveyed to defendant Logan and Warden Jane Doe that he was having suicidal and homicidal ideations. That he was hearing voices

(5B.)

Paranoid. And suffering certain side effects and withdrawals as a direct result of the sudden cessation of his psychotropic medications.

20.) Each defendant took no remedial action.

21.) Defendant Rawson failed to make any meaningful attempts to interview plaintiff concerning his meds. Despite defendant having the authority and responsibility to at any time demand of security to escort plaintiff to his office

22.) Plaintiff would later learn that defendant Rawson routinely and arbitrarily discontinued all new prisoner(s) psychotropic drugs upon arrival contrary to FDOC policy and practice. Without first examining said patient(s) or without consideration of the adverse effect that sudden cessation of a patient's meds. will have on that particular patients physical and mental health.

23.) In April 2017 plaintiff was physically beaten by several gang members while at M.C.I. Solely due to plaintiffs mental illness and symptoms. plaintiff sustained bruising, scarring, and swelling to his face, head, right arm and leg.

24.) On April 14, 2017. plaintiff was apprehended with a homemade knife. Plaintiff begin carrying said weapon around due to the gradual deterioration of his mental capacity.

25.) On April 15, 2017. while in solitary confinement at M.C.I. plaintiff was subjected to social isolation, sensory deprivation, and forced idleness. which did exacerbate plaintiff's acute symptoms.

26.) In the middle of the night, plaintiff attempted suicide by hacking the vein between the crook of his elbow with a dull razor requiring

(5c.)

twelve Sutures.

27.) Plaintiff was placed on self harm observation watch (SHOC)

28.) On or About April 17, 2017. Plaintiff suffering from acute impairment; removed the Sutures from his arm while on SHOC and begin hacking once again into the vein of the already self inflicted injury. With the same razor

29.) Defendants failed to search plaintiff and confiscate the razor plaintiff was using to harm himself. Defendants were deliberately indifferent and unconcerned with the confiscating the tool plaintiff was using to harm himself.

30.) From April 15 through April 21, 2017 plaintiff persistently attempted suicide by hacking into his veins with the same razor he transported from confinement to SHOC. On at least seven separate occassions.

31.) Plaintiff's suicide attempts were sometimes gradual and sometimes sudden. Transpiring between business hours and in the middle of the night.

32.) Plaintiff suicide attempts occured a minimum of seven times.

33.) At all times during Plaintiff's stay on SHOC defendants would Against policy and procedure assign unqualified and uncertified staff with absolutely no crisis intervention training (C.I.T) to supervise plaintiff.

34.) Said staff were also responsible for the total welfare and observation of plaintiff.

35.) Plaintiff asserts that defendants unconstitutional policy and practice of assigning uncertified staff to supervise alone plaintiff's alone contributed to plaintiff's injuries and the separate seven occassions plaintiff mutilated himself.

(5D.)

36.) Said unqualified And uncertified staff could not determine And lack the training to observe A patient's transition from one level to Another. This transition could be gradual or sudden And while certain variables can be triggers for changes (such as receiving upsetting news, involvement in an altercation with A staff member, nurse, or Another patient. or having A medication Adjustment), other times change can occur for no Apparent reason. Said staff's lack the training to prevent patients on Suicide watch from attempting suicide. And on more then one occassion, Plaintiff was encouraged by staff to commit suicide

37.) Patients such as plaintiff suffering acute impairment and psychological distress persistently attempted suicide by cutting themselves with sharp objects. Without the benefit of having A clinical personal properly and sufficiently trained in the diagnosis of A mentally ill patient Able to engage in prevention measures.

38.) Defendants Guidotti, Logan, Rawson, Silcilia, Patten and wetter were eighter present or made Aware of each suicide Attempt.

39.) Defendants Patten And wetter conveyed to plaintiff that they were tired of plaintiff's suicide attempts and done with furnishing plaintiff medical treatment (sutures) for his injuries.

40.) Defendants Patten and wetter were both responsible for plaintiff's medical treatment. Defendants deliberately denied plaintiff Adequate medical treatment for A lessor expensive And deficient course of treatment.

41.) Defendants prescribed wound care, instead of given plaintiffs sutures

42.) Woundcare was inadequate And exposed plaintiff to A substantial

(5E.)

risk of serious harm.

42.) Plaintiff would later develope a serious kidney infection requiring medical treatment ~~because of~~ Tinea cruis as a direct result of defendants deliberate indifference to plaintiff's serious medical needs.

43.) Defendants proscribed course of medical treatment, wound care, further encouraged and facilitated plaintiff's suicidal ideations and attempts.

44.) Plaintiff conveyed to each defendant, Logan, Rawson, Silcilia, Guidotti, Bates, and wetterer the course of treatment for his mental illness. The renewal of his psychotropic medication.

45.) Each defendant, Although having the responsibility and authority to eighter renew plaintiffs psych meds. or properly influence the psychiatrist to do so. Took no remedial action to furnish plaintiff adequate mental health treatment.

46.) Each defendant was fully aware of plaintiff's history of suicidal ideations And that plaintiff was consistently receiving his psychotropic medication up until his arrival at m.c.I. when defendant Rawson Arbitrarily discontinued plaintiff's medication without first examining him.

47.) On April 21,2017, plaintiff decompensating and experiencing acute mental impairment. Again attempted suicide by hacking into his vein of his left writ, causing a very deep and wide lasceration requiring sutures.

48.) Duty Nurse R.m. Horyn was present and responsible for plaintiff's safety around 5:30 A.m. when plaintiff cut himself.

49.) Defendant Horyn utterly failed to render any medical attention to plaintiff. Left plaintiff in the cell bleeding and crying. And went home.

(5.)

50.) Plaintiff's entire cell was covered in blood. Plaintiff felt weak, disoriented, and dizzy.

51.) Defendants Patten and Wetter arrived on shift. Was informed by security of Plaintiff's latest suicide attempt. And need of medical treatment. Defendants responded "let him die." And utterly failed to render any medical care.

52.) Plaintiff did not receive any medical treatment for said injury until noon time. Which would consist of only wound care. When it was obvious that said injury required sutures. Due to the delayed and course of treatment, said injury would take unnecessarily over thirty days to heal.

53.) Plaintiff's cell was partially cleaned by the medical orderly who was not blood certified to do so. And Plaintiff was placed back into the same cell covered with blood.

54.) Plaintiff learned from staff that the secretary of FDOC suspended its contract with Wexford Health Sources, Inc. after conducting an audit at one of its prison. That said private corporation fraudulently falsified medical documents of patients receiving psychotropic meds. Whom was suppose to be receiving such. But, not given such. But billing FDOC for the cost of fraudulent giving inmate patients their psych meds. When such was not there.

55.) Plaintiff believes he was a victim of Wexford, collision, fraud, and deceit, to save money. By illegally removing or discontinuing patients psych meds without consideration of the substantial risk of serious harm posed to the patient's health and safety.

56.) Plaintiff's mental health deteriorated so bad, he had to be placed on crisis stabilization unit (CSU) by defendant Rawson.

(56.)

57.) Plaintiff was transferred to CCI (CSU) from martin in April 2017.

58.) Plaintiff was transferred back to martin C.I. in July 2017 after being discharged from CSU.

59.) Upon Plaintiff's arrival back to martin C.I. on or about August 02, 2017. The duty nurse noted plaintiff current psych. meds. and docket Plaintiff's mental health chart to be reviewed by DR. Rawson.

60.) Plaintiff would make repeated attempts to DR. Rawson, ms. Lee, and Defendant Bryner to be placed back on his psych. meds. to no avail. Plaintiff informed each defendant that being subjected to prolong periods in isolation was making him depressed and suicidal.

61.) While at Martin C.I. in punitive confinement, pending investigation Plaintiff submitted a sick call request to mental health. Pleading for help. Plaintiff informed mental health that he was hearing voices, telling him to kill himself and that Plaintiff was having suicidal ideations.

62.) Plaintiff was interviewed by mental health specialist ms. Lee. She informed Plaintiff that DR. Rawson was aware of his situation and was going to interview plaintiff.

63.) Plaintiff informed ms. Lee that he was once already interviewed by DR. Rawson back in August 2017. In which MR. Rawson promised plaintiff to renew plaintiff's psych. meds. but had failed to do so.

64.) An argument between Plaintiff and ms. Lee ensued. Plaintiff informed ms. Lee that he was going to commit suicide if mental health staff continued to denied him treatment.

65.) ms. Lee retorted that she didn't believe Plaintiff was going to kill himself. And to do so.

(54.)

66.) Plaintiff responded that he was the one and to not bluff him

67.) Defendant Lee responded, "Show me you are the one!"

68.) On September 20, 2017. Plaintiff made one last attempt to receive adequate mental health treatment. Plaintiff submitted another sick call request asserting his suicidal ideations and schizophrenia disorder that was received by mental health staff Defendant Logan. on the same day.

69.) Plaintiffs pleas for help went unanswered. And contrary to doc policy and practice defendants deliberately failed to place plaintiff on suicide watch. or interview Plaintiff immediately.

70.) On sept. 20, 2017 around 8:00 p.m. Plaintiff deliberately overdosed on pills in a suicide attempt.

71.) Plaintiff had to be taken to the hospital and treated for acute kidney and lung failure. Plaintiff was placed in a medically induced coma for approx. four days to preserve his life.

72.) Plaintiff was treated in ICU for five days and in the hospital for seven days.

73.) Plaintiff develope pneumonia in his lungs while in a coma. Plaintiff suffered intense physical pain, hopelessness, fear of death, despair, and manic depression.

74.) The hospital doctors failed to diagnose plaintiff with permanent nerve damage to both his feet and arms. Retinal hemorrhaging and infection in plaintiff's right eye. causing blindness. And excruciating physical pain and psychological distress. And a significant disruption in plaintiffs everyday life.

(5I.)

75.) Defendants have deliberately delayed and or denied providing medical treatment for plaintiff's physical injuries, since his suicidal attempt.

76.) Plaintiff has endured intense excruciating physical pain and psychological distress resulting in plaintiff contemplating and attempting suicide several more times since september 2017.

77.) Plaintiff has need impatient treatment three on at least three separate occassions since september. wherein Plaintiff was committed to the mental Hospital for .

78.) Defendants having the means and resources to adequately address plaintiff's mental health needs has deliberately failed to do so.

79.) Plaintiff has not received the necessary mental health treatment or psychotropic medication necessary to treat his mental illness.

80.) Plaintiff is in serious risk of great bodily harm or death. Plaintiff's mental condition has deteriorated to the point where plaintiff contemplates committing suicide everyday.

81.) Plaintiff avers that his death is imminent due to defendants actions and omissions in failing to treat plaintiff's mental illness.

82.) Plaintiff avers that he is in constant physical and psychological pain as a direct result of defendants deliberate refusal to provide the necessary mental and medical treatment. And avers that further avers that these injuries can become permanent if left untreated.

83.) Plaintiff asserts that he could loose, permanent vision in his right eye. mobility in his left knee. Suffer continuous extreme excruciating pain in both foot and hands. And debilitating health. plaintiff is in imminent danger of great bodily harm.

(5J)

84.) Defendant, centurion/MHM is contracted with FDOC to provide constitutionally adequate medical and mental health services to all prisoners.

85.) Defendant centurion/MHM developed or implemented a policy and practice. And or failed to properly train its employees to recognize a patient, such as plaintiff, suffering from mental illness and suicidal ideation and how to properly address such said diagnoses.

86.) Defendant centurion/MHM violated DOC long standing practice when they failed to properly train, advise, or instruct its employees to take a patient's suicidal proclamation seriously and immediately place that patient on suicide watch and provide necessary care. As such defendants are liable to plaintiff for damages suffered as a result of plaintiff's suicidal attempt committed on sept. 20, 2017.

87.) Defendant Wexford Health Sources, Inc., deliberately devised a policy and practice to deprive mentally ill prisoners, such as plaintiff, of their psychotropic medications. Defendants were deliberate indifferent to plaintiff's medical condition and the likely consequences of that condition.

88.) Defendant Wexford' knew of the substantial risk of serious harm their unconstitutional policy and practice posed to patients, such as plaintiff. Defendants flagrantly disregarded said risk to plaintiff's health and safety.

89.) Defendant Wexford' applied a policy and practice of discontinuing patients psychotropic medication or depriving patients of the same at Martin C.I. In a way that was a reasonably foreseeable consequence of patients committing suicide or attempting the same.

90.) Defendants Julie Jones, Jane Doe, warden, John Doe, major, D. Snider, J. Hoitz, Lee, and John Doe assistant secretary for health services. Were policy makers charged with the care and custody of prisoners at Martin C.I. Also Tom Reimers, defendant.

(5K.)

And with providing them basic necessities of life, including adequate mental health and medical treatment.

91.) Defendants Julie Jones, Tom Reimers, Jane Doe, Warden, John Doe, Major, D. Snider, J. Holtz, Lee Mr. Lee, and John Doe Assistant secretary for health services. Are charged with abdicating their duty to supervise and monitor the treatment of the mentally ill prisoners, and deliberately permitting a pattern by private corporations, contracted employees, and Doc staff to deprive, delay, or discontinue the psychotropic medications of mentally ill prisoners at Martin C.I. And flagrantly disregarding an objective substantial risk of serious harm posed to patients at Martin C.I. Each defendant were responsible and liable to plaintiff for permitting untrained and uncertified staff to have sole supervision over plaintiff and other mentally ill prisoners on suicide watch at Martin C.I. In which case, said unqualified staff could not promptly and properly identify when a patient is suffering a breakdown of his mental faculties and how to properly treat or prevent said patients from committing or attempting suicide.

92.) Defendants Tom Reimers, Julie Jones, Jane Doe, Warden, John Doe, Major, D. Snider, J. Holtz, Lee, Mr. Lee, and John Doe asst sec. of health serv. had past notice of past culpable conduct of staff and employees deliberate indifference and serious conditions posing substantial threat of serious harm to prisoners at Martin and failed to prevent recurrence of said misconduct.

93.) Defendants, Horn, Guidotti, Patten, and Wetherein knew that the course of treatment of wound care was constitutionally inadequate for lacerations requiring sutures. Defendants applied a less expensive and tedious course of treatment that subjected plaintiff's health and safety to a substantial risk of harm.

(54.)

94.) Defendants Thryn, Guidony, Patten, and Wellard were responsible for plaintiff's physical and mental health.

95.) Plaintiff developed several infections as a direct result of defendants deliberate indifference to plaintiff's serious medical needs and future health and safety.

96.) Defendants also knew that wound care on a suicidal patient such as plaintiff would encourage and facilitate his efforts to inflict further harm on himself. Defendants adopted, developed, and implemented Wexford policy with deliberate indifference to the medical needs of plaintiff.

97.) Defendants Logan, Silcilia, Rawson, and McClure were responsible for coordinating the provision of medical and psychiatric care for plaintiff. Defendants knew that plaintiff was undergoing a mental health crisis and experiencing grave pain and psychological distress. Defendants knew that the course of treatment for plaintiff's mental illness was his psychotropic medications being renewed. And long term treatment in crisis stabilization unit (CSU) and transitional care unit (TCU).

98.) Defendant Logan, Silcilia, and Rawson, Repeatedly and deliberately failed to renew plaintiff's psych. meds. Despite being aware of the risk of substantial risk of serious harm posed to plaintiff's health and safety. By the sudden cessation of his psychotropic meds.

99.) Each defendant is being sued in their individual and official capacity for events transpiring while plaintiff was housed at Martin C.I. with the one exception of defendant Dr. McClure.

(5m.)

100.) As a direct and proximate result of the wrongful acts
alleged herein. Plaintiff suffered bodily injury and resulting pain and
suffering. Disability, permanent disfigurement, aggravation of existing
injuries. Humiliation and mental Anguish Plaintiff will suffer such
losses in the future.

(5N.)

☒    Convicted and sentenced state prisoner

☐    Convicted and sentenced federal prisoner

☐    Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.

*See Attached Continuation sheet*
_____
_____

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.

*See Attached continuation sheet*
_____
_____

C.   What date and approximate time did the events giving rise to your claim(s) occur?

*See Attached Continuation sheet*
_____
_____

D.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

*See Attached continuation sheet*
_____
_____

_____

_____

_____

_____

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

*Extreme psychological distress, significant physical injury, humiliation, And PAIN. NeAR death experience, And will continue to suffer such injuries in the future*

_____

_____

_____

_____

_____

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

*1.) Declaratory And injunctive relief As to defendant Jones, As secretary, finding her in violation of the constitution And laws cited And requiring her to provide the protection, care, And Accommodations to which plaintiff is entitled including the following:*

*1.) Plaintiff will not be returned to the care or supervision of any of the*

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

= Relief =

persons complained of above, including persons who denied him care but was not listed as defendants.

2.) Plaintiff will be provided appropriate and comprehensive medical care, including wound cleaning, sutures, diagnostic imaging, off-site care where necessary, and appropriate pain medication.

3.) Plaintiff will be provided appropriate and comprehensive mental health care, including appropriate monitoring for self harm and timely and effective protection from anxiety caused by exposure to prolong periods in isolation

4.) Plaintiff be not subjected to prolong periods in confinement and an adequate form of alternative housing developed for Plaintiff.

B. Compensatory damages as to Wexford and the medical Defendants;

C. Nominal damages where compensatory damages are limited by law;

D. Punitive damages against the individual defendants;

e. trial by jury for those counts so triable; and

f. such other relief as the court deems just and proper.

(6A)

A.  Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑    Yes

☐    No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_MARTIN CI_

B.  Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑    Yes

☐    No

☐    Do not know

C.  Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑    Yes

☐    No

☐    Do not know

If yes, which claim(s)?

_8th Amend claim. Deliberate Indifference claim. Inot monetary_
_Damages_

D.  Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑    Yes

☐    No

7

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑  Yes

☐  No

E.    If you did file a grievance:

1.    Where did you file the grievance?

_while housed At charlotte, Dade, And Lake C.I._

2.    What did you claim in your grievance?

_Deliberate indifference to my serious mental health and medical need needs_

3.    What was the result, if any?

_Approved in part And denied in part_

4.    What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

_Appealed to the highest level._

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

*N/A*

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

*N/A*

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☒    Yes

☐    No

If so, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

*Plaintiff three civil Rights lawsuit were dismissed for eighter malicious prosecution or failing to state a claim upon which relief may be granted*

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

   ☒   Yes

   ☐   No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

   1.   Parties to the previous lawsuit

      Plaintiff(s)   *PROPHET PAULCIN*
      Defendant(s)   *Julie Jones, etal*

   2.   Court *(if federal court, name the district; if state court, name the county and State)*

      *middle District*

   3.   Docket or index number

      *No. 2:17CV-232-FTM-99MRM*

   4.   Name of Judge assigned to your case

      *MAC R, Mc Coy*

   5.   Approximate date of filing lawsuit

      *MAY 2017*

   6.   Is the case still pending?

      ☒   Yes

      ☐   No

      If no, give the approximate date of disposition. _____

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

*Still Pending*

_____

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒ Yes

☐ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

Plaintiff(s) *Prophet Paulcin*

Defendant(s) *Michael D. Crews*

2. Court *(if federal court, name the district; if state court, name the county and State)*

*Middle District of Jacksonville*

_____

3. Docket or index number

*3:12 - CV-576 - J-BJD-PDB*

4. Name of Judge assigned to your case

*Do not Remember No longer in Possession of Document*

5. Approximate date of filing lawsuit

*March 2012*

6. Is the case still pending?

☐ Yes

☒ No

11

If no, give the approximate date of disposition. *MAY 14, 2015*

7.    What was the result of the case? *(For example: Was the case dismissed? Was-judgment entered in your favor? Was the case appealed?)*

*settlement*

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *JAN. 28*, 201*9*.

Signature of Plaintiff   *Prophet Phyleu*

Printed Name of Plaintiff   *Prophet Phyleu*

Prison Identification # *W11537*

Prison Address *WAKULLA C.I. Annex 110 melaleuca DR.*

*Crawfordville*      *FLORIDA*      *32327*

City                         State            Zip Code

### B.   For Attorneys

Date of signing: _____, 20__.

Signature of Attorney   _____

Printed Name of Attorney   _____

Bar Number   _____

Name of Law Firm   _____

12

= PARTIES TO PREVIOUS LAW SUIT =

Plaintiff, Prophet Paulcin

Defendant Walter McNeil et al,

Northern District

3: 09 CV493-LAC CJK

CHARles J. kahn JR.

   Defendant sprayed plaintiff with chemical Agent And placed him on strip for three days in retaliation for tampering with A locking devise in violation of Plaintiff's 8th Amend.Right to the U.S.Const

Approx. filed 2010
Voluntarily dismissed August 24, 2012

   Plaintiff confess under oath to having three or more law suits dismissed As malicious or failing to state a claim under which relief may be granted Plaintiff does not recall the specific details And or is no longer in possession of the documents) detailing said facts.

= Continuation of Question B =
Name of case Paulcin vsecretary, FLA.Dep't of Corr,
Case No: 1:17-CV-22916-LMA
U.S. District court southern District
Judge Patrick A. white case closed by the District Judge
Dismissed without Prejudice

(11A)

Address      _____

Telephone Number      _____

E-mail Address      _____

*Prophet Reuben*
SIGNATURE

1/28/19
DATE

= UNNOTARIZED OATH =
I here declare under the Penalty of Perjury under
U.C.A §1746 that the foregoing facts Are true And correct

MR. PROPHET PAULICIN' DC#M11537 J3/16

**WAKULLA CI - ANNEX**
110 MELALEUCA DRIVE
CRAWFORDVILLE, FL 32327

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Office of the clerk (FAX) Room
400 North Miami Avenue
Miami, FL 33128-7716

LEGAL MAIL
Provided to
Wakulla CI

JAN 2 8 2019

FOR MAILING